IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LARRY DUBOSE, | |
| Plaintiff, | |
| v. | No. 19-cv-8255 |
| JOHN HALLINAN, *et al.*, | Judge Franklin U. Valderrama |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Larry Dubose (Dubose), a former inmate at the Cook County Jail (Cook County Jail), filed suit against Defendants John Hallinan (Hallinan) in his individual capacity, Dr. David Kelner (Kelner) in his individual capacity, and Cook County, Illinois (Cook County) (collectively, Defendants), asserting 42 U.S.C. § 1983 claims and a supplemental state law claim for healing art malpractice. Plaintiff's claims stem from the allegation that Cook County Jail failed to provide him with his prescribed daily medication for the first seven days of his incarceration. R. 34, SAC ¶ 26.[1] Defendants now move to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 31, Mot. Dismiss.[2] For the

---

[1] Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.
[2] Dubose filed his Second Amended Complaint on August 6, 2020 (*see* SAC), nine days after Defendants filed their Motion to Dismiss Plaintiff's Amended Complaint (*see* Mot. Dismiss). Plaintiff explains that he filed the Second Amended Complaint only to correct one typographical error in paragraph 26 of the Amended Complaint (namely that Dubose was ultimately prescribed his medication on January 18, 2018, not November 18, 2018). *See* R. 35, Stipulation. The parties stipulated that the Motion to Dismiss Plaintiff's Amended Complaint would stand against Plaintiff's Second Amended Complaint. *Id.* Accordingly, the Court reviews Defendants' Motion to Dismiss against Plaintiff's Second Amended Complaint.

reasons that follow, Defendants' Motion to Dismiss is granted in part and denied in part.

## Background

Dubose entered Cook County Jail as a pretrial detainee on January 11, 2018. SAC ¶ 7.[3] As part of the intake process, Hallinan (employed by Cook County Jail as a Mental Health Specialist) interviewed Dubose. *Id.* ¶¶ 4, 13. During the intake interview, Hallinan learned the following: Dubose (i) had previously been detained at Cook County Jail in July 2015; (ii) was prescribed medication for a "serious health need," namely a mental illness condition, during that detention; (iii) continued taking that same prescription medication following his 2015 release; (iv) was admitted to a hospital two weeks before the 2018 detention for the same condition; and (v) had been treated in a hospital emergency room the day before the 2018 detention. *Id.* ¶ 13.

Dubose alleges that Hallinan ignored this information and failed to take any action that would have caused Plaintiff to receive his previously prescribed medication. SAC ¶ 15. Dubose further claims that Hallinan knowingly ignored Cook County Jail's official policy that required a Qualified Medical Professional or a Qualified Mental Health Professional to meet with a pretrial detainee, and if the detainee was taking prescription medication, to decide whether to prescribe the same or a comparable medication within 24 hours of a detainee's booking. *Id.* ¶ 9. Dubose

---

By way of further procedural background, this is Defendants' second motion to dismiss; Plaintiff filed his Amended Complaint (R. 28) before the Court could rule on Defendants' first motion to dismiss (R. 19).

[3]The Court accepts as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

2

claims that on or after August 31, 2013, Cook County Jail stopped implementing this policy in practice. Dubose claims that Kelner (employed by Cook County as the Chief of Psychiatry at Cermak Health Services) acted pursuant to a widespread practice of knowingly and improperly disregarding the policy despite it being still in effect officially. *Id.* ¶¶ 11, 17–24. Dubose further alleges that Kelner sought to hide this widespread practice by allowing Hallinan and other non-physicians to enter orders in his name falsely reporting that Dubose and other similarly-situated incoming detainees had been examined by a psychiatrist. *Id.* ¶ 24. No psychiatrist was assigned to participate in the intake process the day Dubose was booked. *Id.* ¶ 19.

On January 12, 2018 and January 15, 2018, Dubose submitted grievances via Cook County Jail's grievance process regarding the pain and suffering caused by the discontinuation of his previously prescribed medication. SAC ¶¶ 25–26. On January 18, 2018,[4] seven days after he entered Cook County Jail, Dubose was seen by a physician and prescribed his medication. *Id.*

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual

---

[4] As noted in footnote two above, Dubose was ultimately prescribed his medication on January 18, 2018, not November 18, 2018, as initially stated in Plaintiff's Amended Complaint. *Id.* ¶ 26.

3

allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

As a preliminary matter, the SAC does not use counts to delineate the asserted causes of action. And, the SAC clarifies neither the constitutional amendments that were allegedly violated nor the constitutional theories that are being asserted under Section 1983. Specifically, the SAC does not state whether this Section 1983 lawsuit is brought on the basis of denial of medical care; inadequate medical care; a failure to intervene; unconstitutional conditions of confinement; cruel and unusual punishment; a *Monell* policy, custom, or practice; more than one of these constitutional theories; or on some other basis entirely. Drawing all reasonable inferences from Plaintiff's allegations, the Court construes the SAC to be an action asserting the following claims: (1) a Section 1983 denial of medical care claim against Hallinan; (2) a Section 1983 denial of medical care claim against Kelner; (3) a Section 1983 *Monell* claim against Cook County; and (4) a supplemental state law healing art

4

malpractice claim against Cook County. The Court addresses the sufficiency of each construed claim in turn.

## I. Section 1983 Claim Against Hallinan

Dubose alleges that Hallinan, the Mental Health Specialist who interviewed him as part of the intake process, violated his constitutional rights by ignoring his health needs and failing to refer him to a Qualified Medical Professional or a Qualified Mental Health Professional who could have prescribed the necessary medication. SAC ¶¶ 4, 13–15. Section 1983 provides that a person may not be deprived of any constitutional right by an individual acting under color of state law. *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). "The act authorizes claimants to sue persons in their individual capacities who are alleged to have violated such rights." *Id.* at 472–73. Individual liability under Section 1983 requires a defendant's personal involvement in the alleged constitutional violation. *See Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015); *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996). As such, allegations must demonstrate that a defendant was "personally involved in the particular deprivation alleged or that the deprivation

5

occurred at the defendant's direction or with the defendant's knowledge and consent." *Neely v. Randel*, 2013 WL 3321451, at *3 (N.D. Ill. June 29, 2013).

Defendants contend that Hallinan cannot be held individually liable for any Section 1983 violation, because Dubose has not sufficiently pled Hallinan's personal involvement in an alleged constitutional violation. Mot. Dismiss at 3–6. Defendants argue that Dubose only alleged that Hallinan "learned" information about Dubose's medical needs, but Dubose fails to allege that "Hallinan, who is not a doctor, played any role in deciding what to prescribe or not prescribe; when Plaintiff would receive his medication; when and for what he should be seen; or knew that Plaintiff was not seen or given medication." Mot. Dismiss at 5. Defendants cite *Manney v. Monroe*, 151 F. Supp. 2d 976, 985–86 (N.D. Ill. July 27, 2001)[5] and *Johansen v. Curran (Johansen II)*, 2019 WL 861373, at *9 (N.D. Ill. Feb. 22, 2019) in support of their position. Mot. Dismiss at 4. In *Manney*, the court granted summary judgment to the defendant-administrators who merely processed the plaintiff-inmate's grievances regarding his dental care, finding that because they had no control over the plaintiff's medical care, they could not be held liable for a deliberate indifference claim. *Id.* (citing *Manney*, 151 F. Supp. 2d at 985–86). Similarly, in *Johansen II*, the court granted summary judgment to defendant Townsend, who reviewed the plaintiff's intake materials, finding that she could not be held liable for an inadequate medical care claim, because she was unaware that the plaintiff had not been receiving his medication, and a

---

[5]In his Response, Dubose correctly points out that *Manney v. Monroe* is a Northern District of Illinois case, not a Seventh Circuit case, as cited in Defendants' motion to dismiss. R. 36, Resp. at 8.

6

review of intake materials was insufficient to establish liability. Mot. Dismiss at 4–5 (citing *Johansen II*, 2019 WL 861373, at *9). Defendants insist that Hallinan's case is no different from the defendants in *Manney* and *Johansen II*.

Dubose retorts that Hallinan *did* individually cause and participate in the constitutional deprivation, because Hallinan served as the "gatekeeper" for Dubose's access to medication. Resp. at 7. Dubose argues that Hallinan knew he needed his medication, and he could not see a prescribing doctor without Hallinan's referral. *Id*. Dubose also distinguishes Hallinan's cited cases, noting that both cases were decided at the summary judgment stage; Dubose argues that the Court should not rely on summary judgment opinions in deciding a motion to dismiss. *Id.*; *see also Bandas v. United Recovery Serv., LLC*, 2018 WL 4286198, at *6 n.3 (N.D. Ill. Sept. 7, 2018) (noting that the plaintiff's cited cases in support of summary judgment were "not only non-precedential but also distinguishable, [. . .] because they were not summary judgment opinions") (collecting cases). The Court agrees with Dubose that summary judgment decisions are of little utility in resolving a Rule 12(b)(6) motion, especially when they relate to a factual question that must be addressed at a later stage. Notably, the *Johansen II* summary judgment opinion followed a Rule 12(b)(6) opinion. The Court looks to the preceding *Johansen* motion to dismiss opinion instead. *Johansen v. Curran (Johansen I)*, 2016 WL 2644863, at *1 (N.D. Ill. May 10, 2016).

In *Johansen I*, the court found that the plaintiff's allegations (that defendant Townsend reviewed the completed intake mental health assessment forms, which indicated the plaintiff's current medications; defendant Perez performed the mental

7

health intake assessment; and defendant Weatherspoon learned that the plaintiff needed his prescribed medications and had concerns about being off his "psych medication") led to the reasonable inference that the defendants "were aware of [the plaintiff's] serious medical needs and were personally involved in the purported constitutional deprivation [of prescribed medication]." 2016 WL 2644863, at *5. The court further found that whether the defendants intentionally or deliberately disregarded the plaintiff's serious medical needs were questions for summary judgment. *Id*.

The Court finds that Dubose's allegations about Hallinan's personal involvement are nearly identical to the *Johansen I* allegations. Dubose pleads that Hallinan personally performed the mental health intake assessment (like defendant Perez in *Johansen I*); learned that Dubose had been previously prescribed a medication for a serious medical need, namely, a mental illness condition (like defendants Townsend, Perez, and Johnson in *Johansen I*); and learned that Dubose had been treated for the same mental illness condition as early as the day before his detention. SAC ¶ 13. Like *Johansen I*, the Court finds that these allegations lead to the reasonable inference that Hallinan was aware of a serious medical need and was personally involved in the ultimate deprivation of medication. *See also Belk v. Watson*, 2019 WL 2188905, at *3 (S.D. Ill. May 21, 2019) (noting that allegations that the defendant-sheriff knew about the plaintiff-inmate's stroke history, knew that the plaintiff needed his blood pressure medication, and failed to ensure the timely medical evaluation necessary to guarantee the medication's delivery were sufficient

8

to find that the sheriff was personally involved in the four-day delay of the plaintiff's intake medical evaluation and access to blood pressure medication). As such, the Court finds that Dubose has sufficiently alleged Hallinan's personal involvement in the alleged constitutional deprivation, and Defendants' motion to dismiss the claim against Hallinan in his individual capacity is denied.

## II. Section 1983 Claim Against Kelner

Defendants also move to dismiss the Section 1983 claim against Kelner and proffer two arguments in support. First, Defendants contend that Kelner is not individually liable for any Section 1983 violation, because Dubose failed to allege that he was personally involved. Mot. Dismiss at 6–8. Second, and alternatively, even if Dubose has sufficiently pled Kelner's personal involvement, Defendants maintain that Dubose still failed to plead that Kelner's actions were "objectively unreasonable." The Court addresses each argument in turn.

### A. Personal Involvement

As a preliminary matter, the SAC is not entirely clear as to whether Dubose is suing Kelner in his individual capacity (like Dubose did with Hallinan) or in his official capacity as Chief of Psychiatry. *Compare* SAC ¶ 5 ("Dr. Kelner is sued in his individual capacity."), *with id.* at ¶ 17 ("At all relevant times, Kelner was the person to whom defendant Cook County had delegated the duty of implementing the official policy . . . ."). There are two ways in which a government actor may be sued: in his official capacity or his individual capacity. *Terry v. Cook Cty. Dep't of Corr.*, 2010 WL 331720, at *2 (N.D. Ill. Jan. 22, 2010). Generally, an official capacity suit is brought

against a high-ranking official as a means of challenging an unconstitutional policy, practice, or custom. *Hill v. Shelander,* 924 F.2d 1370, 1372 (7th Cir. 1991). Suing a government employee in his official capacity is akin to suing the entity that employs him and the standard for liability (the *Monell* standard) is the same. *See, e.g., Kentucky v. Graham,* 473 U.S. 159 (1985). By contrast, and as discussed with regard to Hallinan, an individual capacity suit requires a showing of personal involvement by the government actor. *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995).

In his Response, Dubose explains that he seeks to hold Kelner liable in his individual capacity as a "policymaker," because Kelner knew of the "deficiencies and failed to take reasonable corrective action." Resp. at 6 (internal citations omitted). At first blush, this explanation appears to suggest that despite SAC paragraph 5 ("Dr. Kelner is sued in his individual capacity."), Dubose is really bringing an official capacity claim against Kelner, which, as Defendants argue, would be improperly duplicative of his Section 1983 claim against Cook County. *See* R. 37, Reply at 2 (citing *Wireman v. White Cty. Sheriff's Dep't*, 2017 WL 1491910 (N.D. Ind. April 25, 2017) and arguing that Dubose cannot sue Kelner as a "policymaker," because Dubose would effectively be suing Cook County twice under two different names). However, the Seventh Circuit has held that supervisors may be liable in their individual capacities if they "know about the [unconstitutional] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Turner v. Cook Cty. Sheriff's Office by & through Dart*, 2020 WL 1166186, at *4 (N.D. Ill. Mar. 11, 2020)

10

(quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). An individual does not have to participate directly in the deprivation, but they must have acquiesced in some demonstrable way to the alleged constitutional violation. *Turner*, 2020 WL 1166186, at *4 (citing *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)). "In this manner, supervisors may be held liable under § 1983 for deliberate, reckless indifference to the misconduct of their subordinates." *Id*. This appears to be the policymaker theory of individual liability that Dubose relies on in his Response. *See* Resp. at 9–10.

Here, Dubose alleges that Kelner had been "delegated the duty of implementing the [jail's] official policy" regarding intake procedures; "turned a blind eye to the widespread practice of disregarding the official policy"; and "sought to hide the widespread practice of disregarding the official policy [. . .] by permitting defendant Hallinan and other non-physicians to enter, in the electronic medical records, orders purportedly issued by Dr. Kelner that made it falsely appear that plaintiff and other similarly situated incoming detainees had been examined by a psychiatrist." *See* SAC ¶¶ 17–24. Primarily focusing on the allegation that Kelner permitted non-physicians to falsify medical records, the SAC sufficiently alleges that while Kelner may never have personally interacted with Dubose, he knew about an unconstitutional practice (whether Dubose's allegations satisfy the *Monell* policy or practice requirement is discussed further *infra* 14–18), failed to correct that practice, turned a blind eye to the practice, and even sought to hide it. SAC ¶ 24; *see also Turner*, 2020 WL 1166186, at *5 ("Plaintiff's individual capacity claim against Sheriff

Dart is rooted in his alleged failure to implement policies that provide constitutionally adequate healthcare to detainees suffering from drug addiction and overdose. [. . .] Plaintiff's allegations, if true, sufficiently allege that Sheriff Dart was personally involved in the decision-making that amounted to a violation of Ms. Scott's constitutional right to be free from deliberate indifference to her serious medical needs."); *Terry*, 2010 WL 331720, at *3 ("Read in the light most favorable to Plaintiff, the amended complaint alleges that Dart failed to correct a deliberately indifferent policy that caused a constitutional injury. The Court does not see a material difference between a policymaker's failure to correct an unconstitutional policy and a policymaker's establishment of such a policy in the first place. Therefore, Defendants' motion to dismiss the individual capacity claim against Dart is denied."). The Court relies on Dubose's allegation that he is indeed suing Kelner in his individual capacity (*see* SAC ¶ 5) and finds that Dubose has sufficiently pled Kelner's personal involvement in the alleged constitutional deprivation (*see id.* ¶ 24).

### B. Objectively Unreasonable

A finding regarding individual liability does not end the analysis, however, as Defendants also contend that Dubose must plead Kelner's actions were "objectively unreasonable" to survive a motion to dismiss and insist that Dubose has not done so. Mot. Dismiss at 8–9. Indeed, in *Miranda v. Cty. of Lake*, the Seventh Circuit held that medical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject to the objective unreasonableness inquiry identified in *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). 900 F.3d 335, 352 (7th Cir.

12

2018). Under *Miranda*, the proper inquiry is two steps. "The first step, which focuses on the intentionality of the individual defendant's conduct, remains unchanged [from the deliberate indifference standard] and 'asks whether the [. . .] defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case.'" *McCann v. Ogle Cty., Ill.*, 909 F.3d 881, 886 (7th Cir. 2018) (quoting *Miranda*, 900 F.3d at 353). A showing of negligence or even gross negligence does not suffice. *Miranda*, 900 F.3d at 353. In the second step, a plaintiff must demonstrate the defendant's conduct was objectively unreasonable. *Id.* This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have violated the plaintiff's rights and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable. *McCann*, 909 F.3d at 886. The objective reasonableness standard requires more than medical malpractice and "the state-of-mind-requirement for constitutional cases remains higher." *Miranda*, 900 F.3d at 353.

Defendants do not challenge the first step of the *Miranda* analysis and instead challenge only the second step—that Dubose has not sufficiently pled Kelner's conduct was objectively unreasonable. Mot. Dismiss at 8–9. Defendants argue that Dubose's claim amounts to no more than disagreement with Kelner's psychiatric policy and course of treatment, and detainees cannot select the type of medical care they receive. *Id.* at 9 (citing *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997)).

13

The Court makes no comment on the future of Dubose's claim against Kelner, but at this juncture, the Court finds that Dubose has pled enough to satisfy the *Miranda* steps. As to the first step, Dubose sufficiently pleads Kelner's purposeful, knowing, or even reckless conduct in claiming that Kelner permitted non-physicians to falsify medical records in order to hide an allegedly unconstitutional practice. SAC ¶ 24. And as to the second step, the facts alleged add up to a plausible basis for a claim of objectively unreasonable conduct on Kelner's part. Specifically, Dubose alleges that Kelner failed to correct and even sought to hide a policy of depriving detainees of an intake evaluation by a medical professional, which thereby prevented access to prescribed medication for detainees' serious medical conditions. *Id.* ¶¶ 9–11. Dubose further alleges that this policy of medication deprivation caused him pain and suffering. *Id.* ¶¶ 25–26; *see also Sloat v. Benzing*, 2020 WL 5981422, at *2 (S.D. Ill. Oct. 8, 2020) (finding that the plaintiff had plausibly claimed that jail administrators and nurses acted objectively unreasonably in denying the plaintiff medication needed to prevent seizures).

Having plausibly pled personal involvement and objective unreasonableness, Defendants' motion to dismiss the individual capacity claim against Kelner is denied.

### III. Section 1983 Claim Against Cook County

In addition to county employees, Dubose also asserts a Section 1983 *Monell* claim against Cook County. Dubose alleges that Cook County Jail engaged in a "widespread practice" of stopping the implementation of an official policy that requires a medical professional to decide within 24 hours of a detainee's booking

14

"whether to continue the same or comparable medication that the detainee reports having been prescribed for a serious medical and mental health need." *See* SAC ¶¶ 6, 9.[6] Defendants argue that Dubose has not stated a Section 1983 claim, because he has not sufficiently alleged that Cook County engaged in a policy or practice that resulted in Dubose's injury, a necessity for government liability under *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691–92 (1978). Mot. Dismiss at 10; *see also McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (To adequately plead *Monell* liability, allegations "must allow [the court] to draw the reasonable inference that the [defendant] established a policy or practice" which caused the injury.). Defendants insist further that Dubose's "belief" without any factual support that an allegedly changed policy is unconstitutionally inadequate is not enough. *Id*.

Dubose counters that at the pleadings stage, he is not required to provide "evidentiary support" for his widespread practice claim nor is he required to "identify every other or even one other individual" harmed by the alleged widespread practice.

---

[6]In his Response, Dubose attempts to provide further factual context regarding the official Jail policy that was originally implemented in 2013 and that is now allegedly being disregarded. Resp. at 1. Dubose explains that "Before it entered into a consent decree with the federal government in *United States v. Cook County*, 10-cv-2946, the Jail had a widespread problem of interrupting essential prescription medication of persons entering the Jail. The Jail corrected this problem in compliance with the consent decree but reverted to its past unconstitutional practices after the decree was vacated, thereby harming plaintiff." *Id*. There is no mention of this consent decree in the SAC. The Court disregards this additional context and highlights the axiomatic rule that a plaintiff may not amend his complaint in his response brief. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (citing *Frederico v. Home Depot,* 507 F.3d 188, 201–02 (3d Cir. 2007) (citing *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984)); *see also Collins v. Chicago Transit Auth.*, 2020 WL 5819871, at *3 (N.D. Ill. Sept. 30, 2020) ("Again, although Collins adds some factual context in her response brief, her attempt to amend her complaint in her response does not save the day.").

15

Resp. at 13 (citing *Williams v. Dart*, 967 F.3d 625, 638 (7th Cir. 2020) (noting that "[s]upporting 'each evidentiary element of a legal theory' is for summary judgment or trial, not a test of the pleadings under Rule 12(b) or 12(c)," and finding that the district court dismissed the plaintiffs' equal protection claims on the pleadings in error) (internal citations omitted)).

Defendants reply by distinguishing *Williams*, explaining that the *Williams* complaint provided more factual support than what is provided here. Reply at 8–9. In *Williams*, the plaintiffs set forth sufficiently detailed allegations to put the sheriff on notice that he could be found liable for intentional racial discrimination by asserting specific bail review policies that they believed "disproportionately target[ed] African Americans by using charge, prior arrests, and neighborhood to determine eligibility for release" and claiming that more than four out of five inmates affected by the sheriff's policy were black. *See Williams*, 967 F.3d at 638. Defendants argue that here, in stark contrast, Dubose fails to "identify what policy he is talking about, when, or to what end the policy was adopted, what duty the Jail had, under what authority this duty was prescribed, or how the policy relates to the alleged constitutional violation." Reply at 10. Further, Defendants argue that Dubose has only pled that the alleged practice of disregarding a policy injured *him*, and *Monell* liability requires more than one cited instance. *Id*.

While the Court agrees that the SAC does not include the same level of factual support as the *Williams* complaint, the Court finds that Dubose has asserted just enough at this juncture to meet the *Monell* policy or practice pleading requirement.

16

The Court looks to *Glisson v. Indiana Department of Corrections* for the standard. In that case, the Seventh Circuit held that, following the death of an inmate, *Monell* liability could be premised on a health care provider's decision not to require a coordination of care for a seriously ill inmate. 849 F.3d 372 (7th Cir. 2017). The Seventh Circuit noted that "[t]he key is whether there is a conscious decision not to take action. That can be proven in a number of ways, including but not limited to repeated actions. A single memo or decision showing that the choice not to act is deliberate could also be enough. The critical question under *Monell* remains this: is the action about which the plaintiff is complaining one of the institution itself, or is it merely one undertaken by a subordinate actor?" *Id.* at 381.

Here, Dubose alleges that Kelner made the conscious decision not to correct the practice of foregoing evaluations by medical professionals at intake and even sought to hide that practice by permitting non-physicians to falsify medical records to make it appear that Dubose and other similarly situated incoming detainees had in fact been evaluated. SAC ¶¶ 23–24. In other words, Dubose has alleged that a policymaker made a conscious decision not to act, and more than one incoming detainee was injured by this policy choice. The Court makes no comment on the future of Dubose's claim against Cook County, but based on these allegations, the Court finds that Dubose has alleged a *Monell* claim above the speculative level. *See Gonzalez v. Wexford Health Sources, Inc.*, 2020 WL 6381361, at *3 (N.D. Ill. Oct. 30, 2020) (finding that the allegation that the defendant "consciously chose" to not enforce its "medical hold" policy, thereby ultimately leading to decedent's death,

17

raised a right to relief on the plaintiff's *Monell* claim above the speculative level). Because Dubose has, at this juncture, pled just enough to support a *Monell* claim, Defendants' motion to dismiss the Section 1983 claim against Cook County is denied.

### IV.   Healing Art Malpractice Claim Against Cook County

In support of an apparent healing art malpractice tort claim against Cook County, Dubose alleges the following and nothing more:

- "Defendant Cook County is an Illinois municipal corporation. Plaintiff seeks to impose liability on the County under 42 U.S.C. § 1983 for injuries he incurred because of a widespread practice described below and under the doctrine of respondeat superior for a state law tort committed by employees of Cook County." SAC ¶ 6.

- "As a supplemental state law claim against defendant Cook County only: *as a result of the foregoing*, plaintiff was subjected to healing arts malpractice under Illinois law." *Id.* ¶ 28 (emphasis added).

To prevail on a medical malpractice claim, a plaintiff must establish (generally, by expert testimony) the following elements: "(1) the proper standard of care, (2) a deviation from that standard, and (3) an injury proximately caused by that deviation." *Prairie v. Univ. of Chicago Hosps.*, 698 N.E.2d 611, 614–15 (Ill. App. Ct. 1998) (citing *Purtill v. Hess*, 489 N.E.2d 867, 872 (Ill. 1986)).

The Court agrees with Defendants' contention that Dubose "completely fails to identify any facts which would indicate how Cook County is liable for healing arts malpractice within the scope of the Act." Mot. Dismiss at 13. "Even under the most

liberal of notice pleading standards, Plaintiff's threadbare complaint and catch-all 'as a result of the foregoing,' is simply insufficient to identify how Cook County has committed healing arts malpractice." *Id*. Dubose's Response, which insists that his allegations that "he did not receive his previously prescribed medications for seven days because of the conduct of employees of Cook County pursuant to a defective system for continuing prescription medication" are sufficient to state a claim for healing art malpractice, does not save him. *See Collins*, 2020 WL 5819871, at *3 ("Again, although Collins adds some factual context in her response brief, her attempt to amend her complaint in her response does not save the day.").

As such, Defendants' motion to dismiss Dubose's supplemental state healing art malpractice claim against Cook County is granted. The Court reaches this conclusion based on Dubose's failure to plead even the basic elements of a healing art malpractice claim, and the Court need not address Defendants' argument regarding the affidavit requirements of 735 ILCS 5/2-622 nor Defendants' argument regarding the Illinois Local Government and Government Employee Tort Immunity Act (Tort Immunity Act).

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [31] is granted in part and denied in part. The Court's dismissal of Dubose's healing art malpractice claim is without prejudice. If Dubose chooses to amend his complaint consistent with this Opinion, he must do so on or before March 10, 2021.

_____
Franklin U. Valderrama
United States District Judge

DATED: February 10, 2021